ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 15 2010
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JERRY WAYNE GORE, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-095-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Jerry Wayne Gore ("Gore"), filed an application for Title II disability insurance benefits ("DIB") and medical insurance benefits on April 21, 2005, alleging a disability onset date of April 3, 2002. (Transcript ("Tr.") 313, 334-35.)[1] That application was denied on June 8, 2005 and again on reconsideration. (Tr. 51-54, 55.) Gore timely requested a hearing before an

---

[1] The relevant time period for Gore's application for DIB is April 3, 2002, his alleged onset date, through December 31, 2002, his last insured date. (Tr. 22.) Thus, Gore must establish disability on or before December 31, 2002 in order to be entitled to a period of disability or DIB. See 20 C.F.R. § 404.131. The relevant period for Gore's application for Medicare benefits, however, is April 3, 2002 through December 31, 2006. (Tr. 308-09.)

administrative law judge ("ALJ"), and a hearing was held in Fort Worth, Texas before ALJ Jack Raines on January 11, 2007. (Tr. 598-618.)

In his April 2005 application, Gore listed the following as illnesses, injuries or conditions that limited his ability to work: "3 heart attacks, hearing [and] eyesight." (Tr. 334.) As to how these conditions limit his ability to work, Gore responded, "I can't lift over 20 lbs, I tire easily, I have bad heel sockets." (Id.) On March 27, 2007, the ALJ issued a decision finding that Gore was not disabled. (Tr. 22-28.) On April 17, 2008, the Appeals Council denied Gore's request for review. (Tr. 11-14.) Gore subsequently filed the instant action in federal court on February 9, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment

or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198; *see also Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's.

*Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

## III. ISSUES

Gore presents the following issues:

1. Whether the ALJ improperly failed to consider and determine Gore's entitlement to Medicare coverage; and

2. Whether the ALJ's determination that Gore could perform his past relevant work is supported by substantial evidence.

## IV. ADMINISTRATIVE RECORD

### A. Background and Vocational History

Gore was born on March 29, 1947. (Tr. 603.) He completed high school and some college. (Tr. 603-04.) His past relevant work was as a field office coordinator. (Tr. 28.) Gore had not engaged in substantial gainful activity from his alleged onset date of April 2, 2002 through December 31, 2002, his last insured date for DIB purposes. (Tr. 24, citing 20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*)

### B. Administrative Hearing

At his hearing before the ALJ, Gore was represented by an attorney and testified on his own behalf. (Tr. 22.) Gore testified that he worked for the Tollway Authority from 1974 through 2001. (Tr. 605.) He testified that the last day he worked was February 14, 2001. (Tr. 604.) He said that he had quit working because his health was bad and he could no longer do his job as an inspector and partial safety officer, and he did not want his health to "jeopardize a job." (Tr. 604.) Gore stated that he had "some heart problems," which included pains in his chest that made him feel like he "was having a heart attack over and over again." (Tr. 605.) When asked what he did after quitting

his job, Gore told the ALJ that he went camping, traveled a little bit to Arkansas and California, mowed his front yard, worked on a fence, and helped his wife with the yard work. (Tr. 605-06.) He said that he had to stop mowing his yard about six months after he left his job because he would get extremely tired and his chest would start hurting again. (Tr. 607.) Gore testified that he had to quit driving about four months prior to his hearing. (Tr. 607.) Before that, he said he would drive in town to pick up groceries and that he would drive to Lake Texoma to camp. (*Id.*) He also testified that he had experienced difficulty sleeping since 2002 or before. (Tr. 607-08.) A vocational expert ("VE"), Donna Humphries, also testified at the administrative hearing. (Tr. 22.) The VE testified, *inter alia*, that given Gore's RFC he would be able to perform his past relevant work.

D. The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 30-43); 20 C.F.R. § 416.920(b). At step one, the ALJ found that Gore was fully insured from the time he alleged his disability began through December 31, 2002. (Tr. 24.) He also found that he had not engaged in substantial gainful activity during the period from his alleged onset date of April 2, 2002 through his last insured date of December 31, 2002. (*Id.*, citing 20 C.F.R. §§ 416.1520(b) and 404.1572 *et seq.*)

At step two, the ALJ determined that Gore had a severe impairment: coronary artery disease. (Tr. 24.) The ALJ then continued to step three, finding that Gore did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 24-25, citing 20 C.F.R. Part 404, Subpart P, Appendix 1; §§ 404.1520(d), 404.1525 and 404.1526 and *Stone v. Heckler*, 742 F.2d 1099 (5th Cir. 1985).) He noted that in reaching his decision, he specifically considered the listed impairments that address the cardiovascular system. (Tr. 24.) He

then found that Gore's diabetes, retinopathy and obesity were not severe, commenting that there was "no indication that these medical conditions impose any work related limitations." (Tr. 25.)

After reviewing the medical evidence in the record, the ALJ formulated a residual functional capacity ("RFC") for Gore as follows:

> Prior to December 31, 2002, [Gore] retained the residual functional capacity for work involving occasionally lifting and carrying 10 pounds and frequently lifting and carrying less than 10 pounds. He was able to stand and/or walk for at least 2 hours in an 8-hour work day and sit for about 6 hours. He was able to occasionally climb stairs but could never climb ramps, ladders, ropes or scaffolds. He was able to frequently crouch and stoop and to occasionally balance and kneel. He could never crawl.

(Tr. 26.)

At step four, the ALJ found that Gore was capable of performing his past relevant work as a field office coordinator. (Tr. 27.) He also found that such work would not require Gore to perform work-related activities precluded by his RFC. (*Id.*, citing 20 C.F.R. § 404.1565.) Ultimately, the ALJ concluded that Gore was not disabled within the meaning of the Act at any time from the alleged date of onset through the last insured date for purposes of DIB, December 31, 2002. (Tr. at 28.)

## V. DISCUSSION

### A. Whether the ALJ's improperly failed to consider and determine Gore's entitlement to Medicare coverage.

Gore first claims that the ALJ improperly failed to consider and determine Gore's entitlement to Medicare coverage, for which he was insured past his last insured date for DIB purposes. (Plaintiff's Brief ("Pl. Br.") at 12-14.) Because Gore's employer, the North Texas Tollway Authority, a state governmental entity, became exempt from the Old-Age, Survivors and Disability Insurance ("OASDI") system, Gore was only insured under Title II of the Social Security Act for

purposes of DIB through December 31, 2002. ("Defendant's Brief ("Def. Br.") at 4.) But his employer continued to withhold and pay Medicare taxes through the duration of his employment, thus extending his last-insured date for purposes of Medicare qualified government employment earnings ("MQGE") to December 31, 2006. (Pl. Br. at 13-14; Tr. 308-09.) When Gore filed his application for disability benefits, that application constituted an application for hospital insurance benefits also, and his entitlement to that benefit should have been determined along with his entitlement to DIB. 42 U.S.C. § 426 (2009). Gore claims that the medical evidence in the record establishes that he had severe vision problems, which, combined with his worsening heart and pulmonary conditions, would have prevented a return to his prior employment. (Pl. Br. at 14.)

Specifically, Gore points to the following medical evidence relating to his heart condition. (Pl. Br. at 7-8.) He received stent implants in 2000 and 2003. (Tr. 378.) In August 2005, physician's assistant Michael Johnson ("Johnson"), who worked with William Segar, M.D. ("Segar"), Gore's treating physician, completed an RFC form limiting Gore to standing and walking no more than one hour per day and to sitting no more than five hours per day. (Tr. 476-83.) Johnson also noted that Gore's pain and fatigue would frequently interfere with his attention and concentration and that he could not tolerate stress at work. (*Id.*) Finally, he opined that these limitations would prevent Gore from working. (Tr. 476-83.) Then in December 2005, Gore was hospitalized and received another stent implant in his right coronary artery, which had a 90% blockage. (Tr. 388-395.) He also continued experiencing chest pain and was hospitalized twice in 2006 for chest pain and breathing problems. (Tr. 588.)

As for his eyes, Gore claims that between his last-insured date for purposes of DIB and his last-insured date for purposes of Medicare his vision worsened significantly. (Pl. Br. at 8-9.) In

August 2004, Gore's vision was not significantly impaired, in that he had 20/20 vision in his right eye and 20/25 in his left eye. (Tr. 376.) But in May 2005, Gore was diagnosed with mild background diabetic retinopathy in both eyes, an early cataract in his left eye, and pseudophakia of the right eye. (Tr. 376.) By September 2006, his visual acuity had decreased to 20/50 in each eye, and he complained that he was unable to look at bright lights "due to pain" in his eyes. (Tr. 198-99.) He also complained that the burning pain he was experiencing in his right eye caused nausea. (*Id.*) He was diagnosed at that time with diabetic macular edema. (*Id.*) Later that month, his visual acuity had worsened to 20/100 in the right eye and 20/80 in his left eye. (Tr. 194.) Gore underwent successful cataract implant surgery in his left eye in November 2006. (Tr. 164.) Gore continued to complain of vision problems and of an inability to read or drive (Tr. 167), and he underwent vitreal macular traction surgery in December 2007. (Tr. 225.) According to Gore, this evidence establishes that he would have been unable to perform any substantial gainful employment after his vision problems developed, and that the ALJ erred in failing to adjudicate his eligibility for Medicare benefits from the period from 2002 through 2006. (Pl. Br. at 9.)

The Commissioner admits that the ALJ failed to do a correct calculation of Gore's last insured date for purposes of his Title VIII Medicare claim, but argues that his failure resulted in harmless error. (Def. Br. at 7.) According to the Commissioner, the ALJ "expressly evaluated" all of the medical evidence in coming to his decision, and Gore failed to show that his condition worsened between his two last-insured dates. (Def. Br. at 5-7.)

Regarding Gore's heart condition, his medical records from January 14, 2004 show that he had done well following his stent replacement. (Tr. 379.) Dr. Bernard Gojer, M.D. ("Gojer") noted on August 23, 2005 that Gore's heart condition had been "clinically stable without recurrent angina"

since he received the stent in 2003. (Tr. 378.) The Commissioner argues that Gore cites no medical evidence to support his claim that his heart and pulmonary conditions worsened between December 31, 2002 and December 31,2006. (Def. Br. at 5.) In November 2003, Gore's treating physician, Segar, opined that Gore was "very capable of being trained in computer [or] desk type work." (Tr. 516.) The ALJ discussed physician's assistant Johnson's report and rejected it, noting that Segar had no apparent involvement in issuing the report, that his own earlier report had contradicted Johnson's later report, and that there was no medical evidence in the record to support Johnson's report. (Tr. 26.) *See, e.g., Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (allowing an ALJ to reject any physician's opinion where the evidence in the record supports a contrary conclusion.)

As for Gore's claims regarding his eyesight, the Commissioner points out that the ALJ noted that Gore had a corrected visual acuity of 20/20 in his right eye and 20/25 in his left eye as of August 2004. (Tr. 26, 376.) At that time, his opthamologist noted that Gore had no restrictions in his vision. (Tr. 376.) The Commissioner claims that Gore has failed to demonstrate that his eye condition worsened between August 2004 and December 31, 2006.

The Court finds that Gore has failed to establish that he was prejudiced by the ALJ's error in articulating Gore's last-insured date for purposes of Medicare benefits. The ALJ clearly considered all of the evidence in the record, including evidence from the time period between December 31, 2002 and December 31, 2006, and Gore has failed to demonstrate that his condition worsened between those last two insured dates. Thus any error the ALJ made in this respect was harmless.

B. <u>Whether the ALJ's determination that Gore could perform his previous work is supported by substantial evidence.</u>

Gore next argues that the ALJ's determination that he could perform his past work as a field office coordinator is not supported by substantial evidence. (Pl. Br. at 14-18; Tr. 27-28.) Gore claims that the evidence was unclear regarding the exact job he last occupied, and that the VE was unsure in her testimony of the classification of the job. (Pl. Br. at 14-15.) Specifically, the VE stated regarding the field coordinator position, "...it sounds like possibly a sedentary job more of like an engineering assistant clerk kind of position. I would equate it to about that. Sedentary, SVP of 5 or 6." (Tr. 615.) Gore points out that although the ALJ stated in his opinion that the VE's testimony did not conflict with the *Dictionary of Occupational Titles* ("DOT"), there is no "engineering clerk" job in the DOT, and that the only jobs resembling what Gore described during the hearing are Engineering Document Control Clerk, DOT code 206.367-010 and Blueprinting Machine Operator, DOT code 979.682-014. The first is a light exertional level job with an SVP of 6, and the second is a light exertional level job with an SVP of 5. Thus, Gore claims that there is not substantial evidence in the record to support the ALJ's conclusion that Gore's prior work was done at the sedentary level. (Pl. Br. at 15.)

Gore claims that the ALJ did not properly comply with Social Security Ruling 82-62 to determine the duties of Gore's prior work and to explain how the evidence establishes that he can perform those duties. (*Id.*) Gore further claims that the ALJ failed to comply with Social Security Ruling 00-4p to ask the VE if there were conflicts between her testimony and the DOT, to obtain a reasonable explanation for a conflict if there was one, and to explain how the conflict was resolved.

The Commissioner posits that the ALJ properly relied on VE testimony at step four in finding that Gore was capable of performing his past relevant work as a field office coordinator. (Def. Br. at 7, citing Tr. 27-28 and *Leggett v. Chater*, 67 F.3d 558, 564-65 (5th Cir. 1995).) The Commissioner points out that the VE cited the DOT during her testimony, explaining that Gore's prior work history fell between two different job descriptions. (Def. Br. at 8-9; Tr. 615.) Thus there was no need to resolve any conflict because the VE had explained her opinion in terms of the DOT.

As for a function-by-function assessment of Gore's previous work history in terms of his RFC, Gore provided a detailed description of his job in his work history report, explaining that he supervised personnel, issued job assignments, stood and walked for three hours in an eight-hour workday, and sat for five hours in an eight-hour workday. (Tr. 335-36.) He also testified regarding his job duties. (Tr. 611-14.) Thus, the ALJ was well aware of the specific requirements of Gore's job as reported by Gore. Moreover, an ALJ may find that a claimant is not disabled at step four if the claimant is able to return to his past relevant work either as he performed the work in the relevant past or as others generally perform that work in the national economy. *Leggett*, 67 F.3d at 564-65. In this case, the ALJ concluded, in concordance with the VE's testimony, that given Gore's RFC, he was capable of performing his past relevant work both as he performed it and as it was performed in the national economy. (Tr. 28.)

Moreover, Gore's attorney chose not to cross-examine the VE. (*See* Tr. 617.) In *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), the Fifth Circuit addressed this very issue, explaining that:

> "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."

*Id.* at 146-47. The Court, therefore, rejects Gore's attempt to challenge the VE's testimony without good cause at this date.

Gore has failed to meet his burden of proof in the first four steps of the sequential evaluation process. *Crowley*, 197 F.3d at 198; *see also Greenspan*, 38 F.3d at 236. He has failed to show he was unable to perform his past relevant work during the relevant time period on a sustained basis. An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). The ALJ's determination that Gore was capable of performing his past relevant work on a sustained basis is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until **October 6, 2010**. The United States District Judge need only

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **October 6, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**SEPTEMBER 15, 2010**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE